[Civ. No. 8666.   Third Dist., June 28, 1955.]

JOHN S. DINSMORE et al., Appellants, v. BRIDGEVILLE
LUMBER COMPANY (a Corporation), Respondent.

Ben Van Tress for Appellants.

Huber & Goodwin for Respondent.

VAN DYKE, P. J.—Plaintiffs and appellants brought this action against defendant and respondent to obtain specific enforcement of a contract to convey real property and incidental relief.   Prior to April 20, 1946, appellants were the owners of 680 acres of timber land in Humboldt County.   On that day a contract was entered into with respondent, whereunder they agreed to sell the land to respondent for the sum of $7,000 and to convey when the purchase price had been paid.   On the 7th of May following another contract was

entered into by the parties. This is the contract which the appellants herein seek to have specifically enforced. Stated in substance, that contract was as follows: In consideration of one dollar the respondent agreed to convey to appellants, by quitclaim deed, "at any time after the 7th day of May, 1951 and before the 7th day of May, 1952," for a payment of $100, the same property which respondent was then purchasing under contract from appellants. The parties refer to this document as an option and we will so refer to it. The writing contains no explanation on its face as to why property costing $7,000 and being currently purchased at that price from appellants might thus be conveyed back to them for $100 some five or six years later. The parties proceeded under the purchase and sale agreement. Respondent paid for the land and received a grant deed therefor from appellants, which deed was absolute in form and contained no reference to the outstanding option contract.

By their complaint the plaintiffs alleged the execution of the foregoing agreements and the execution of the deed to respondent. In an apparent attempt to explain the whole transaction, appellants alleged that, as owners of the subject property, they first entered into an oral contract with respondent wherein it was agreed that they would sell the property to respondent, give it a period of five years to remove the timber therefrom and that after the five-year period all rights of respondent in · and to the property and timber would revert to appellants; that to carry out the terms of that oral contract the parties executed the purchase and sale agreement whereunder respondent was to obtain title to the property and the later option agreement whereunder appellants for the sum of $100 could repurchase the subject land. They alleged the fairness of the repurchase agreement under the circumstances, and that in all respects it was fairly arrived at.

On June 1, 1951, appellants recorded the option agreement, tendered to respondent $100 in money and demanded a deed. Later they began this action. They alleged respondent's refusal to convey; that on January 11, 1949, respondent had made an agreement with one Thomsen, selling the timber on the land to him, with the right to enter and remove the same for a period extending to March 1, 1952; that Thomsen had begun to remove the timber and was at the time the action was filed still cutting and removing the same and making payments therefor to respondent; that as of June 1, 1951, there was still

standing on the property and being cut and removed by Thomsen timber worth more than $25,000. They asked that the court compel the respondent to convey the property to them; that respondent be declared to be a trustee for their benefit of all money received from Thomsen after June 1, 1951, and that respondent be required to assign and deliver to them the Thomsen agreement, together with all moneys received thereunder after said date.

The court found that there was no antecedent oral agreement between the parties limiting respondent to five years to remove the timber on the property; that when the option agreement was executed none of the parties intended or expected that appellants would be entitled to any but cut-over land thereunder; that the $100 purchase price provided for in the option was not fair, adequate, reasonable or equitable under the circumstances and that the parties never contemplated that appellants would be "entitled to get back an alleged $25,000 worth of timber, or any timber" for such consideration and did not bargain therefor. Further the trial court found that the option agreement, properly construed, gave to respondent a one-year leeway period to insure the removal of the timber on the subject land. The court concluded that appellants were not entitled to specific enforcement of the option agreement and adjudged that they take nothing as against respondent. From that judgment this appeal was taken.

It appears from the record that the main point of dispute between the parties was as to the time at which respondent was to convey the land back to appellants if appellants elected to pay $100 therefor. Appellants insist that they could demand and be entitled to a conveyance at any time during the year period between May 7, 1951, and May 7, 1952; that at any time in that period which they chose to select they could tender the $100, demand a deed and effect an equitable conversion as of that date, entitling them not only to conveyance of the legal title, but to an accounting of any receipts from the property which the respondent thereafter acquired. On the contrary, respondent contended that the parties intended the reconveyance would carry cut-over land only and that if, during the year, appellants elected to take the property, respondent would have the balance of the year period to clear it of timber and to reconvey the land when that was done. When on June 1, 1951, and while the land still contained much valuable timber, appellants gave notice of their election to purchase and tendered the purchase price, respondent, acting in

accordance with its interpretation of the option agreement, placed a deed in escrow with the title company, quitclaiming the property to appellants, but with instructions that the deed was to be delivered to appellant "on or after May 1, 1952, upon the receipt of the sum of $100 for the benefit of" respondent. Respondent alleged that thereby it did "conform with and perform all matters required of defendant under the said option agreement."

Over the objection of appellants the trial court took testimony concerning the entire transaction between the parties eventuating in the two written agreements and the deed from appellants to respondent. This it was entitled to do for two reasons: The option was uncertain in its terms relating to the time when respondent was obligated to convey if during the period from May 7, 1951, to May 7, 1952, appellants elected to buy; it was further uncertain as to the right of respondent to take timber up to May 7, 1952, notwithstanding an earlier election to buy. The court was also entitled to examine into these same matters to determine whether or not the option agreement was fair and reasonable and, therefore, the proper subject of an equitable decree of specific performance. Mr. Maurer, president of respondent corporation, testified as follows: That he negotiated the purchase of the timber land from appellants; that respondent eventually paid for the land and obtained a deed; that appellants requested an option to buy the property back some three weeks after the original contract for the sale to respondent had been executed; that appellants asked the land be reconveyed to them after the timber had been all removed; that one of the appellants who had been doing the negotiating pointed out to him and he agreed that since respondent was operating a timber and sawmill enterprise it was only interested in timber and that when the timber was gone the land would be of no use to respondent, whereas it would be of some use to appellants for grazing purposes; that on that basis he at first agreed to an option on the basis of $500 to be paid for the cut-over lands and submitted the proposition to appellants; that appellants objected to that price as being excessive in view of the fact that the land would be of little value with the timber removed; that he then agreed for respondent to accept the sum of $100 and to reconvey the land after the timber had been removed; that when the option was given respondent had scheduled as of that time no immediate logging operations on the land but had intended to log it in the future; that during negotiations for the option there

was a general discussion as to the condition the property would be in when it was turned back and it was definitely understood, and that he had so stated to appellants, that the reconveyance would be of the land only without any timber; that it had been stated between the parties that respondent would have one year within which to remove any timber standing after May 1, 1951, and that such was his understanding.

Upon these disputed constructions of the contract the court found that the agreement should be construed as giving to the respondent the full period from May 7, 1951, to May 7, 1952, to remove the timber from the land before being required to reconvey the land to appellants. We think the evidence fully supports the trial court's construction of the ambiguous provisions of the contract as to the time when and the conditions under which the reconveyance to appellants was to be made and that in solving that uncertainty it was made clearly to appear that appellants could not by making a demand for an earlier conveyance effect an equitable conversion so as to charge respondent with the duty to account for and turn over to them all proceeds from the logging of the lands from the date of notice of their election to purchase and demand for a conveyance.

The trial court specifically found that the contract was not under the circumstances a fair one and the proper object for equitable remedy of specific performance. If, however, the contract, properly interpreted, did not bind respondent to convey the property until the end of the year's leeway period and permitted it to complete the removal of the timber, then the record will not support a finding that so construed the contract was inequitable. Respondent's own evidence and its conduct belie such a claim, for, when appellants elected to buy, tendered the price and demanded a deed, respondent promptly deposited the required quitclaim deed conditioning delivery only upon the lapse of that period. ■ Appellants have given no intimation that they would accept the conveyance of the land with the timber off. Their demand that the land with $25,000 worth of standing timber be turned over to them for the sum of $100 appears to be unconscionable, but such considerations are beside the mark for, taking the contract as construed by the court, they have never elected to exercise the contract rights given them and were, therefore, entitled to no relief. Treating that contract as an option, their tender and demand did not square with the offer; treating it as a conditional

contract to convey, their tender and demand did not meet the condition.

The judgment is affirmed.

Schottky, J., and Finley, J. pro tem.,* concurred.

A petition for a rehearing was denied July 19, 1955.

*Assigned by Chairman of Judicial Council.